McLEAN et al. v. KISHI et al.     (No. 6739.)

(Court of Civil Appeals of Texas.    Galveston.
Jan. 8, 1915.)

1. MINES AND MINERALS ☞77—OIL LEASES
—TERMINATION.
Where a six months' lease of land for driving oil wells was conditioned that a well must be driven, which would produce a given quantity per day and for a given time, before it was to be considered a paying well so as to give the lessee a permanent lease, the lessor had a right to cancel the lease on a failure of any of the driven wells to produce the contract quantity in the time limited, though they did produce a paying quantity.
[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 204; Dec. Dig. ☞77.]

2. INJUNCTION ☞73—ACTS OF DIRECTORS—
INJUNCTION BY STOCKHOLDERS.
Where a board of directors of an oil company contracted to drive wells on lands leased for six months, and that the lease would terminate if a paying well was not produced within the time limited, and that a paying well was one that would produce a stated number of barrels a day for a certain number of days, stockholders cannot enjoin a cancellation of the lease because the driven wells produced a paying quantity, though less than the lease called for.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 139, 140; Dec. Dig. ☞73.]

Appeal from District Court, Orange County; A. E. Davis, Judge.

Suit for injunction by Marrs McLean and others against K. Kishi and others. From a judgment refusing the injunction, complainants appeal. Affirmed.

McMEANS, J. This is an appeal from an order of District Judge A. E. Davis of the First judicial district, made in vacation, refusing to grant a temporary injunction. The parties have not filed briefs, and the appeal is presented to us on the record alone.

K. Kishi, being part owner of 400 acres of land, entered into a written contract with certain parties on June 10, 1912, whereby they were granted the right to prospect for oil and other minerals thereon. This lease was transferred by the grantees to the Terry Oil Company, and thereafter Kishi, on August 12, 1913, by a contract with the Terry Oil Company, renewed the lease, giving the latter six months after September 10, 1913, within which to explore for oil and minerals in the land upon the same terms and conditions as contained in the first. There was a provision in both leases to the effect that

when the drilling for oil should have been commenced it should be continuously prosecuted, unavoidable accidents excepted, "until such well is completed so as to produce oil in paying quantities or until it is reasonably certain that oil will not be found in said well in paying quantities." Another provision is as follows:

"A well producing oil in paying quantities, as mentioned in this contract, is here defined to be a well that will produce by natural flow, or by pumping, as much as 25 barrels of oil every twenty-four hours for a period of thirty days."

Afterwards the Terry Oil Company procured from Isaac Lang, who owned an undivided one-fourth interest in the 400-acre tract, a lease containing practically the same stipulations and conditions as in the Kishi lease, but providing that the lessee should have until March 10, 1914, in which to explore for oil, and providing further that:

"If oil is not found in paying quantities by the 10th of March, 1914, then this lease shall terminate and expire by its own terms."

In this lease "paying quantities" was defined to mean a production from one well of 20 barrels of oil per day.

Acting under these contracts, the Terry Oil Company with commendable diligence began and continued explorations for oil on the land in question, and, although it drilled and finished a well, it never succeeded in getting a production of 25 barrels per day for 30 consecutive days, nor a production of 20 barrels per day; but oil was discovered at a depth of about 3,100 feet; yet, although modern devices for pumping the oil to the surface were used, the production could not be made to exceed 10 barrels per day. On or about March 13, 1914, Kishi and Lang asserted that, inasmuch as oil in paying quantities had not been produced from their land within the time limited by the lease contracts, the rights of the lessee to longer explore for oil on their land had expired, and this contention was agreed to by a majority of the board of directors of the Terry Oil Company, and they were about to carry the agreement into effect by the execution of releases and placing same upon record, when they were restrained by a temporary restraining order granted by Judge John M. Conley of the Sixtieth judicial district upon the application for an injunction presented to him by the appellants, who are stockholders in said oil company; the judge of the First judicial district being inaccessible at that time. The application was then set for a hearing before Judge Davis at Newton, in Newton county, and on March 20, 1914, was heard by said judge on the application and supporting affidavits and the answers of defendants and contesting affidavits. By the answers and the affidavits in support thereof, it is made clearly to appear that the limit of time in which the Terry Oil Company was granted to explore for oil and other minerals on said land had

fully expired, and that, said company not having brought in a well of the capacity of either 20 or 25 barrels of oil per day, its right to longer explore for oil on said land had ceased, but, notwithstanding this, the said Kishi had agreed to give to the Terry Oil Company a lease of 135 acres of the 400-acre tract upon terms and conditions that were acceptable to a majority of the board of directors of the Terry Oil Company, and that these parties were about to enter into the new contract when they were enjoined from so doing by the temporary restraining order. The petition for injunction is quite lengthy, and we will not attempt to set out all its allegations. The gravamen of the complaint is that the Terry Oil Company by its expenditure of a large sum of money in exploring for oil, while, on account of many accidents, it had not been able to bring in a well of the capacity stipulated, had nevertheless demonstrated that oil in large and paying quantities existed in the land, and that this had rendered the land very valuable, and that, having by its efforts proved the existence of oil, it had the right to continue operations, notwithstanding the lapse of time granted for such purpose; and that the threatened action of a majority of the board of directors of said oil company to release said land to the owners would, if carried out, work to the plaintiff stockholders great and irreparable injury.

[1, 2] Upon these facts, we think that no error was committed in refusing the temporary injunction applied for. The parties by their contract had fixed and agreed upon a limit of time within which the oil company might explore for oil, and therein stipulated the terms upon which their right to continue upon the land might be indefinitely extended; that is, by the bringing in a well of a given daily production. This being their contract, they must be bound thereby, and the courts are not at liberty to extend or enlarge it or vary its terms because of misfortune or accident of the oil company not provided for by the contract, which, without any fault on the part of the landowners, prevented it from successfully bringing in a well of the stipulated daily production. The time limited in the contract having expired, and the oil company having failed to produce oil in the quantity stipulated, the landowners had the right to declare the lease at an end; and we fail to perceive that a majority of the board of directors in undertaking by compromise with the owners to save, or procure a new lease upon, 135 acres of the 400-acre tract, were not in good faith acting for the best interest of the oil company and its stockholders.

The judgment of the court below is affirmed.

Affirmed.